## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**ALVIN HERRON,**

      **Petitioner,**

**v.**                        **Case No. 4:19cv186-WS/CAS**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On April 25, 2019, Petitioner, Alvin Herron, a prisoner in the custody of the Florida Department of Corrections, proceeding with counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On August 27, 2019, Respondent filed an answer with exhibits. ECF No. 3. Petitioner filed a reply on December 2, 2019. ECF No. 9.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons set forth herein, the

pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

## Background and Procedural History

Petitioner was charged by Indictment filed in the Second Judicial Circuit of Leon County, Florida, on July 21, 2010, with the May 18, 2010, first-degree premeditated murder of Peggy Anderson by shooting with a firearm.  Ex. A at 14-15.[1]  The State did not seek the death penalty and jury trial was held on January 24-26, 2012, before a six-member jury.  Exs. B at 263; D-H.  The jury found Petitioner guilty as charged of first-degree murder and he was sentenced to life in prison with 601 days' time served. Exs. B at 292-303; H at 635.

Petitioner's appeal to the state First District Court of Appeal was affirmed per curiam without written opinion.[2]  The mandate was issued on March 7, 2013.  Exs. I, J. K, L.  *See* Herron v. State, 107 So. 3d 409 (Fla. 1st DCA 2013) (table).

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through AA submitted in conjunction with Respondent's answer.  *See* ECF No. 3.

[2] Petitioner raised one issue on direct appeal:  Whether the trial court erred in admitting a photograph of him without a proper predicate.

On May 19, 2014, Petitioner filed a counseled motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.[3]  Ex. M at 4-13.  An evidentiary hearing was held on October 18, 2017, at which Petitioner and his trial counsel testified.  Ex. M at 714-804.  The post-conviction court denied the motion for reasons stated on the record, which were adopted by reference in an October 18, 2017, written order.  Ex. M at 700, 795-801.

Petitioner, with counsel, appealed to the First District Court of Appeal, which affirmed per curiam without opinion on March 5, 2019.[4]  Rehearing and written opinion were denied and the mandate was issued on May 1, 2019.  Exs. Z; AA.  *See* Herron v. State, 267 So. 3d 357 (Fla. 1st DCA 2019) (table).

On April 25, 2019, Petitioner filed a petition for writ of habeas corpus, ECF No. 1, pursuant to 28 U.S.C. § 2254 in this Court raising the following ground for relief:

---

[3] The issues raised in the Rule 3.850 motion were:  (1) Trial counsel rendered ineffective assistance (IAC) in failing to call a favorable witness and/or failing to properly investigate; and (2) IAC in failing to object to admission of the unredacted recording of Petitioner's interrogation.  Ex. M at 8, 9.

[4] The issues raised on appeal from denial of post-conviction relief were: (1) Error in denying IAC in counsel's failure to object to the unredacted recording of police interrogation; and (2) error in denying leave to amend or supplement first post-conviction claim.  EX. W.

(1) Trial counsel rendered ineffective assistance by failing to object to the admission of the unredacted video of Petitioner's police interrogation.

## Analysis

### Standard of Review

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody only under certain specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also* <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011). The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted).  The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' "  Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim."  Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).  In regard to claims of ineffectiveness of trial counsel, the Petitioner must have presented those claims in state court " 'such that a reasonable reader would understand each claim's particular legal basis and factual foundation.' "  Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007) (citing McNair, 416 F.3d at 1302).

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by

clear and convincing evidence that the state court determinations are not fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).  However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

Further, under § 2254(d), federal courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  Marshall v. Lonberger, 459 U.S. 422, 434 (1983).  "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review."  Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011).  Credibility and demeanor of a witness are considered to be questions of fact entitled to a presumption of correctness under the AEDPA and the Petitioner has the burden to overcome the presumption by clear and convincing evidence.  *Id.*

For claims of ineffective assistance of counsel, the United States

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

deficient performance, a "defendant must show that counsel's performance

fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is

"strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."

Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at

690).  Federal courts are to afford "both the state court and the defense

attorney the benefit of the doubt."  *Id.* at 13.  The reasonableness of

counsel's conduct must be viewed as of the time of counsel's conduct.  *See*

Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at

690).

To demonstrate prejudice under Strickland, a defendant "must show

that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." 466 U.S. at

694. "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* For this Court's purposes, "[t]he question

'is not whether a federal court believes the state court's determination'

under the Strickland standard 'was incorrect but whether that determination

was unreasonable—a substantially higher threshold.' " Knowles v.

Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550

U.S. 465, 473 (2007)). "And, because the Strickland standard is a general

standard, a state court has even more latitude to reasonably determine that

a defendant has not satisfied that standard." Mirzayance, 556 U.S. at 123.

It is a "doubly deferential judicial review that applies to a Strickland claim

evaluated under the § 2254(d)(1) standard."[5] *Id.* Both deficiency and

---

[5] Petitioner contends that because the First District Court of Appeal affirmed denial of post-conviction relief without explanation, the review in this Court is *de novo*. ECF No. 1 at 8. This is incorrect. The Eleventh Circuit has made clear that only if the federal district court determines that the state court unreasonably applied Supreme Court precedent may the district court apply a de novo review. Hawthorne v. Sec'y, Dep't of Corr., No. 18-12027, 2019 WL 4200005, at *3 (11th Cir. Sept. 5, 2019). A per curiam decision of the state court is presumed to be a decision on the merits absent any indication or state-law procedural principles to the contrary. Shelton v. Sec'y, Dep't of Corr., 691 F.3d 1348, 1353 (11th Cir. 2012) (reversing Shelton v. Sec'y, Dep't of Corr., 802 F. Supp. 2d 1289 (M.D. Fla. 2011) and citing Harrington v. Richter, 562 U.S. 86, 99 (2011)). The fact that a state court per curiam decision without explanation provides no precedential value under Florida law does not mean the court did not decide the case on the merits. Where no explanation is provided in a per curiam affirmance by the last state court to consider a constitutional issue, this Court is to "look through" the decision to the last reasoned state court decision and presume it provides the relevant rationale for the merits decision. Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (cited in Hawthorne, 2019 WL 4200005,at *3).

prejudice must be shown to demonstrate a violation of the Sixth

Amendment.  Thus, the court need not address both prongs if the petitioner

fails to prove one of the prongs.  <u>Strickland</u>, 466 U.S. at 697.

### <u>Ground for Relief</u>: Whether trial counsel rendered ineffective assistance by failing to object to admission of the unredacted video of Petitioner's interrogation.

Petitioner contends that his trial counsel rendered ineffective

assistance by requesting that the entire unredacted video of Petitioner's

interrogation by Investigator Besse of the Tallahassee Police Department

be played for the jury.  Petitioner contends that the video contained

inadmissible and highly prejudicial information and comments by

Investigator Besse that should have been redacted and that, but for the

admission of these prejudicial comments, there is a reasonable

probability—one being sufficient to undermine confidence in the outcome—

that the result of the trial would have been different.  ECF No. 1 at 10-26.

Petitioner cites as inadmissible and prejudicial Besse's assertion to

Petitioner that he had people putting Petitioner on the scene of the shooting

with a gun in his hand arguing with the victim; that Petitioner had a prior

record involving possession of a firearm and illegal drug activity; that Besse

could tell from Petitioner's body language that he was lying; and that Besse

made many assertions that Petitioner was lying.  ECF No. 1 at 15-18.

At trial, the prosecutor did not intend to play any portion of the video for the jury—intending instead to have the investigator testify about some of Petitioner's statements, to which defense counsel objected. Ex. F at 369 (transcript pagination). The prosecutor explained:

> **MR. BAUER** [prosecutor]: I'm going to have [Investigator Besse] testify as to statements, because he [Petitioner] made statements about possession of [a] firearm. He talks about his criminal history. So counsel isn't going to stipulate to that. I can't redact that at this point. So I - - I told counsel that we weren't going to play it because it's going to put me in a Catch-22. I'm going to infringe on his rights. He knows I can't play that part. So I don't know why he's objecting.
>
> **MR. COLLINS** [defense counsel]: I'm objecting, Your Honor, because the best evidence, the complete evidence is the recorded video. It acknowledges the correct waiver of rights, the manner in which they were waived. And anything short of that, I would object to. If there's other inadmissible evidence, well that's the State's problem. But I would object to this manner of  - -
>
> **THE COURT**: What's your legal objection?
>
> **MR. COLLINS**: Completeness.
>
> **THE COURT**: All right. I'll overrule that objection. Do you agree there is inadmissible evidence that you object to in the tape?
>
> **MR. COLLINS**: Your Honor, there are some things that are brought forward by law enforcement that probably shouldn't be presented to the jury. I would agree to that, yes, sir. But - - the best evidence is - -
>
> **THE COURT**: Well, I mean, I'm prepared - -  if you want, we'll play the whole tape. But if there are portions you're objecting to, then I guess we're going to be in the posture of having to do it as proposed by the State.

**MR. COLLINS**:  Well, I'm not going to object, your Honor. I'm going to make a strategic decision to let that other stuff come on in.  And I would require the complete video be played.
. . . .

**THE COURT**:  All right.  Mr. Collins, you had an opportunity to consult with your client on this issue?

**MR. COLLINS**:  Yes, Your Honor.  I've talked with Mr. Herron about this possible, objectionable material contained in his  - - his statement being given.  And you agree with me, Mr. Herron, that you would prefer your complete statement be published  - -

**THE DEFENDANT**:  Yes, sir.

**MR. COLLINS**:  - - than have this gentleman recite what you were saying?

**THE DEFENDANT**:  Yes, sir.

Ex. F at 369-371.

Before the video was played for the jury, defense counsel asked for a

"curative instruction" regarding the references to prior crimes and

possession of a firearm, and the trial judge instructed the jury as follows:

**THE COURT**:  . . .  I have made a ruling that rather than allow the officer to paraphrase what was said by the defendant in the case, that I will - - that I will require that the full statement, the videotaped statement, be played for you so that you can hear it firsthand.

I have not listened to this tape, but I understand from the attorneys that you may hear some information during the course of this statement that could be construed by you as involving other crimes or wrongs by the defendant.  He is not on trial for any crime or wrong or act not contained in the indictment, and you should disregard any such mention.

Ex. F at 373.  Thereafter, the entire video was played for the jury with the express agreement of defense counsel and with the express permission of Petitioner.  Ex. F at 374-423, 371.

During the hour-long video of the interrogation on June 5, 2010, eighteen days after the shooting, the following statements were made and are at issue in this case:

> **INVESTIGATOR BESSE**: Okay. You ever been in any trouble before?
>
> **THE DEFENDANT**: Yeah. I done been in trouble before.
>
> **INVESTIGATOR BESSE**: For what?
>
> **THE DEFENDANT**: One time drugs, and then another time for a pistol.
>
> **INVESTIGATOR BESSE**: What happened with that pistol charge?
>
> **THE DEFENDANT**: I did county time.
>
> **INVESTIGATOR BESSE**: County time?
>
> **THE DEFENDANT**: Yeah, because that was my first charge. I got adjudicated withheld.
>
> **INVESTIGATOR BESSE**: Okay. What was it? Carrying a concealed weapon or something, or what kind of charge was it?
>
> **THE DEFENDANT**: Possession of a firearm, I think.
>
> **INVESTIGATOR BESSE**: By delinquent or convicted felon or what?
>
> **THE DEFENDANT**: No. I wasn't no convicted felon. I got adjudicated withheld because they said it was my first charge.
>
> **INVESTIGATOR BESSE**: Okay. How old were you when that happened?
>
> **THE DEFENDANT**: Eighteen.

**INVESTIGATOR BESSE**: That was your first adult charge?

**THE DEFENDANT**: Yes. Yes. Yes, sir.

**INVESTIGATOR BESSE**: Okay.

**THE DEFENDANT**: First adult charge.

. . . .

**INVESTIGATOR BESSE**: Uh-huh. So when you have the opportunity right now to - - to, you know, explain yourself and give your side of the story as to what's going on, but - - I mean, I've got people putting you there on scene - -

**THE DEFENDANT**: Definitely can't put me - -

**INVESTIGATOR BESSE**: - - a gun in hand arguing with her.

. . . .

**THE DEFENDANT**: So how long will it take for y'all to get this squared away?

**INVESTIGATOR BESSE**: Well, you telling the truth would have done it.

**THE DEFENDANT**: Well, I already did it then.

**INVESTIGATOR BESSE**: No, you didn't.

**THE DEFENDANT**: Who didn't?

**INVESTIGATOR BESSE**: You didn't. I mean, you didn't tell the truth.

. . . .

**INVESTIGATOR BESSE**: I want you to tell me the truth and help yourself out.

**THE DEFENDANT**: I just told you the truth.

**INVESTIGATOR BESSE**: That's not the truth.

. . . .

**INVESTIGATOR BESSE**: Are you honestly sitting there and just do that when you know you are sitting across from a cop and lying your ass off to him?

(UNINTELLIGIBLE).

**THE DEFENDANT**: All right, sir. I'm telling you, you got the wrong dude, sir.

**INVESTIGATOR BESSE**: Well, let me tell you something from just sitting here watching you. As soon as I brought her up - -

**THE DEFENDANT**: Uh-huh.

**INVESTIGATOR BESSE**: Your whole body language changed immediately. (UNINTELLIGIBLE). It was - - it was just it was kind of interesting to watch. I mean, your lips started quivering. Things you can't - - you can't control. But I can tell by sitting across that as soon as I mentioned the [victim's name], your - - I mean, your level just went up.

**THE DEFENDANT**: I'm still here.

**INVESTIGATOR BESSE**: I know you're still here, but I'm saying your body language, things you don't realize, things that I watch - -

**THE DEFENDANT**: Uh-huh.

**INVESTIGATOR BESSE**: - - after doing this job for eight years - -

**THE DEFENDANT**: Uh-huh.

**INVESTIGATOR BESSE**: - - and sitting across from people like you for eight years, I mean, you learn lots of body language and stuff like that. And when I mention specific things they're involved in, man, it's like a immediate - -

**THE DEFENDANT**: Oh, yeah. That doesn't mean nothing. I have been sitting here chilling, sir. I told y'all the information.

**INVESTIGATOR BESSE**: You're not helping yourself by lying to me. I'll tell you that.

. . . .

**INVESTIGATOR BESSE**: I'm telling you you're making a mistake by lying to me.

**THE DEFENDANT**: I 'm not lying to you, sir.

**INVESTIGATOR BESSE**: Yeah, you are.

Ex. F at 383-84, 401, 405, 413, 415-16, 420).  Besse accused Petitioner of

lying on several other occasions during the interrogation.  *See* Ex. F at 412,

414, 422.

This claim was raised in Petitioner's Rule 3.850 and an evidentiary

hearing was held October 18, 2017.  Ex. M at 714-804.  Petitioner, who

was represented by counsel, testified that trial counsel never showed him

the video of his interrogation prior to trial and that he did not know at the

time that he was being videotaped.  Ex. M at 727-28.  He said he blindly

agreed to the tape being played because he trusted his lawyer.  *Id.* at 729.

He said his counsel never discussed with him, prior to trial, any

objectionable evidence about his credibility that might appear on the video.

*Id.* at 731, 734, 740.  He denied that his counsel discussed any strategy

reason with him for playing the full tape.  *Id.* at 733.  Petitioner further

testified that his counsel never talked to him about any possible

impeachment if he testified and never discussed with him that he had no

prior convictions for the jury to hear about if he testified.  *Id.* at 729-30, 749.

Petitioner was asked on cross-examination whether his testimony at trial, if

he had chosen to testify, would have been consistent with his statements

on the video.  Ex. M at 738.  He responded:

**A.** No, sir.

. . . .

**A**. I would have told the truth. Only thing I just in the - - in the video, I was - - only part I was lying about being - - not being on the scene. You know, my testimony I would have gave in trial, you know, I would have told the truth.

**Q**. And the truth would have been that you were, in fact, at the scene?

**A**. Yes, sir.

**Q**. And that would have been totally inconsistent with what you told the police; is that right?

**A**. Right.

Ex. M at 738-39. Petitioner agreed that counsel's overall trial strategy was that Petitioner was not present at the shooting, as he stated numerous times in the police video, and that counsel presented a witness who testified that Petitioner was not there. *Id.* at 743.

Petitioner's trial counsel testified at the evidentiary hearing that he was not able to review his trial files, which had been damaged while in storage. He had no current recollection of pretrial meetings with Petitioner and what they may have discussed. Ex. M at 751-55. From reviewing the transcript of the trial, he agreed that the video had some otherwise inadmissible or objectionable evidence but "as the record reflects, this [was] a strategic decision." *Id.* at 756. His recollection was refreshed by the transcript such that he recalled a person (Sam Cosby) who was with

Petitioner on the night of the shooting, and who counsel suggested at trial was involved in the crime.  Cosby was not allowed to testify because he was found incompetent.  *Id.*  Defense counsel testified that he believed the video provided an opportunity to convince the jury of Petitioner's innocence without subjecting Petitioner to cross-examination by testifying at trial.  *Id.* at 757, 763.

Trial counsel also testified that he had a witness that he planned to (and did) present who would testify Petitioner did not commit the crime.  He also planned to argue that Sam Cosby was present at the scene and was the shooter.  Defense counsel said he believed having Petitioner on the video insisting he was innocent was a helpful addition to his defense strategy.  *Id.* at 758.  He said he discussed admission of the video with Petitioner, as the trial record reflected, but clarified, "I don't really think that Mr. Herron really understood much of what I was trying to tell him. . . .  I would say that it's more my decision than an informed, intelligent agreement that he understood."  *Id.* at 759-60.  On cross-examination, counsel testified that he did not know then, and did not know now, that it is per se impermissible for the jury to hear a police office state that the defendant is a liar.  *Id.* at 761.

The judge at the post-conviction hearing, who was also the trial judge in the case, denied the claim, setting forth the reasons on the record as follows:

> It is my ruling here today that I'll deny the motion for post-conviction relief. I do not find there was ineffective assistance of counsel, nor that the defense was prejudiced by any of the decisions of Mr. Collins.
>
> I think the first thing we need to focus on is what options were available to Mr. Collins. My ruling at trial was that either the State could present the verbal statement by Officer Besse, which Mr. Collins characterized as a cherry-picked version of what occurred, or that the whole statement be played. That was the Court's ruling at trial.
>
> To the extent it could be argued that ruling was in error, that is not cognizable here in a 3.850 motion. That could have been or should have been raised on appeal. I don't know whether it was or was not.
>
> I had made the determination that the State would be allowed to present Officer Besse's verbal testimony, if we could not play the entire tape. As I say, if this was error, it could have been or should have been raised on appeal.
>
> The defense here argues that Mr. Collins had many options. He didn't have many options. Those were his two options: either to hear the verbal version by Officer Besse or to play the whole statement. Whether or not the defendant testified or not really doesn't factor into that decision. That was not one of the alternatives. Certainly he could have called him in addition to those things occurring, but it was not an either-or situation.
>
> The defense has also suggested now that Mr. Collins should have been there with a redacted version of the statement. Again, that was not one of the options before the Court at that point in time. Frankly, it would be an exceedingly exceptional defense attorney that had that kind of foresight to

be there with a redacted statement. I was not going to make the State redact the statement.

Assuming what's presented here is cognizable, I do think that Mr. Collins' decision to insist on the full video being played was a reasonable strategy decision. The fact that he wanted to see, or felt that it would be preferable for the jury to see the defendant in the video rather than to have the officer describe how it had occurred is not an unreasonable decision. I think many attorneys would agree to that.

It's been suggested and I've indicated that the defendant testifying was not one of the alternatives. But it's been suggested here that that's what Mr. Collins should have insisted upon. There are many attorneys that prefer that their client not testify, particularly when the testimony in this instance would have had to have been in direct conflict to a prior statement.

Particularly when you have a defendant that Mr. Collins was - - you know, he's trying to be polite about this, but that Mr. Herron's apparent understanding of everything that was going on was somewhat limited.

I certainly don't think it was - - it's not one of the issues before the Court, but the defense has kind of suggested that the defendant's testimony was the answer to all these questions. I don't find that to be the case.

Looking at prejudice, I've looked at what was said. The drug involvement, as the defense has admitted, the comment was very minimal.

Much has been made of the firearm comment. Frankly, in my reading, very minimal. If you read, and I'm reading it, it says: "What happened with that pistol charge?

"I did county time.

"Yeah, because that was my first charge. I got adjudicated withheld.

"Okay. What was it, carrying a concealed weapon or something or what kind of charge was it?

"Possession of a firearm, I think.

"By a delinquent or convicted felon or what?

"No, I wasn't no convicted felon. I got adjudicated withheld because they said it was my first charge.

"Okay. How old were you when it happened?

"Eighteen.

"That was your first adult charge?

Yes, yes; yes, sir.

"Okay. First adult charge."

I mean, yes, it's inadmissible, but to say that it's greatly significant testimony I think overblows it, particularly in context with the Court gave a - - you know, I guess I shouldn't suggest it was a wonderful instruction since I made it up, but I think I did do a pretty good job, as I read back over it, of clarifying to the jury that he was not on trial for things mentioned in the statement.

Then the other argument, it relates in the statement as to hearsay being admitted by the officer and the opinion being commented on by the officer. I would agree with the defense that clearly under the current case law, those comments are inadmissible.

However, I will say that this is an area of the law that's been developing. The only Florida case cited by the defense is a 2015 case. I think there is a more recent Florida Supreme Court case where it is made a lot more clear that it has been in the past. I would say that the law has developed a good deal since 2012 clarifying that these kind of statements by law enforcement are not admissible.

Having said that, every interview by law enforcement of a defendant is going to have some observations by the interviewer, some comments by the interviewer. And I don't find this to have been an extreme case. Yes, the officer said he was lying. I don't know that you'll find any interviews of this type where the officer isn't at least suggesting that the defendant is lying. It is not a matter of degree. Those kind of statements are

not absolutely prohibited. As I say, this is an area of the law that's been clarified.

Certainly if we were in a vacuum, I would rule that those statements could not come in. At some point in time, you get where you have a statement that doesn't mean anything when you take out everything law enforcement said.

I thought Mr. Collins did a good job of suggesting that some of these comments by law enforcement suggested overreaching, that they had already decided before they interviewed the defendant what their opinion was, they had already obtained a warrant for him, and that they weren't, in fact, searching for the truth. He made a good deal out of the fact that Mr. Herron had turned himself in to make this statement.

The portion about body language, I'm not so sure that is inadmissible testimony. It is inadmissible testimony for the officer to say, based on what I saw, he was lying. I don't think the actual observations themselves are inadmissible. So I think to some degree some of that is admissible.

Overall, I don't think that these statements were likely to have affected the outcome of the case. A jury can take these kind of relatively minimal extraneous things and set them aside. I don't see any likelihood that these statements impacted significantly the jury's decision in this case.

(Ex. M, p.796-801).

At trial, defense counsel argued in closing, among other things, that the video showed Petitioner vehemently denying numerous times that he shot anyone.  Ex. H at 593.  Counsel conceded Petitioner did not tell the truth about being in the area, but explained that Petitioner was "streetwise" and was just trying to find out what the police knew.  Counsel suggested Petitioner was trying to "cover for somebody" and that his untruth during the

interview does not make him the shooter.  *Id.* at 594, 613, 618, 620.

Counsel argued that when Petitioner turned himself in, the police already

had a warrant for his arrest, had concluded he was the shooter without

even speaking to him, and were not seeking the truth in the interview, but

were seeking only a confession.  *Id.*  Counsel emphasized that Investigator

Besse implied to Petitioner that if he told the truth, *i.e.*, confessed, he could

leave, but Petitioner never confessed to the shooting.  *Id.* at 613.

Respondent contends that under § 2254 and under Strickland,

Petitioner has the burden to show that the state court's ruling was an

unreasonable application of Strickland or an unreasonable determination of

the facts in light of the evidence in the record.  Respondent argues that

regardless of whether defense counsel knew if a police officer's allegation

that the defendant was lying was legally admissible, defense counsel was

fully aware of the prejudicial contents of the video and made a calculated

decision for strategic reasons to have it played in full.  ECF No. 3 at 32.

Moreover, Respondent argues, Petitioner has not identified any facts that

the state court unreasonably determined and has not rebutted any such

facts by clear and convincing evidence as required by § 2254(e)(1).  *Id.* at

33.

Under Florida law, it is not likely that Investigator Besse would have been allowed to testify at trial that Petitioner was lying when he said he did not shoot Anderson and that he was not in the area where the shooting occurred.  The Florida Supreme Court has explained, " '[p]olice officers, by virtue of their positions, rightfully bring with their testimony an air of authority and legitimacy.  A jury is inclined to give great weight to their opinions. . . .'  Accordingly, it is especially troublesome when a jury is repeatedly exposed to an interrogating officer's opinion regarding the guilt or innocence of the accused."  <u>Jackson v. State</u>, 107 So. 3d 328, 340 (Fla. 2012) (quoting <u>Tumblin v. State</u>, 29 So. 3d 1093, 1101 (Fla. 2010) (quoting <u>Bowles v. State</u>, 381 So. 2d 326, 328 (Fla. 5th DCA 1980))).  These same principles apply to an officer's opinion testimony or comments concerning a defendant's truthfulness.  <u>Tumblin</u>, 29 So. 3d at 1101 ("Moreover, '[i]t is especially harmful for a police witness to give his opinion of a witnesses' [sic] credibility because of the great weight afforded an officer's testimony.' " (quoting <u>Seibert v. State</u>, 923 So. 2d 460, 472 (Fla. 2006) (quoting <u>Page v. State</u>, 733 So. 2d 1079, 1081 (Fla. 4th DCA 1999))).

The Florida Supreme Court has recognized that when the impermissible comments are contained in a recording of an interrogation, they may be admissible if they provoke a relevant response or provide a

context to the interview such that a rational jury would recognize that the statements are interrogation techniques used to secure a confession. *See* Jackson, 107 So. 3d at 340 (citing McWatters v. State, 36 So. 3d 613, 638 (Fla. 2010)). However, in the present case the comments by Investigator Besse did not elicit a confession or other relevant response, but only denials by Petitioner. As the Florida Supreme Court in Jackson concluded, "While the detectives may have intended to secure a confession by consistently expressing their conviction in Jackson's guilt, they did not secure a confession throughout their thirty-seven minute dialogue. In addition, although the detectives' opinions about Jackson's credibility, guilt, and the weight and sufficiency of the evidence were not expressed during in-court testimony, admission of these statements essentially permitted the State to improperly elicit police opinion testimony and invade the province of the jury." Jackson, 107 So. 3d at 341. *See also* Barnhill v. Jones, No. 3:17cv693-MCR/CAS, 2018 WL 9441324, at *13 (N.D. Fla. Nov. 15, 2018), *report and recommendation adopted*, No. 3:17cv693-MCR-CAS, 2019 WL 4017608 (N.D. Fla. Aug. 26, 2019) ("[G]enerally, a witness's opinion as to the credibility, guilt, or innocence of an accused is inadmissible as invading the province of the jury," (citing Seibert v. State, 923 So. 2d 460, 472 (Fla. 2006); Tumblin, 29 So. 3d at 1101; Jackson, 107 So. 2d at 340)), *appeal*

*filed*, Barnhill v. Sec'y, Dept. of Corr., No. 19-13799 (11th Cir Sept. 24, 2019).

Trial counsel conceded at the evidentiary hearing that he did not think the prosecutor would have presented those portions of the video in which Besse accused Petitioner of lying or having prior charges involving guns or drugs. Ex. M at 762. He also testified he did not think those portions of the interrogation would have been admissible. In spite of the likelihood that Investigator Besse's repeated comments that Petitioner was lying or had past criminal charges would not have been admissible in his trial, the State post-conviction court concluded that trial counsel did have a reasonable strategic reason for allowing the entirety of the video to be played for the jury. The court noted that counsel had only two choices made available by the judge—the entire video or Besse's recounting of only portions of the interrogation—and that counsel's choice to allow the entire video was reasonable in light of Petitioner's continuous and strong denial of guilt on the video and the other factors in counsel's defense strategy.

The Supreme Court has held that a defendant claiming ineffective assistance of counsel must show counsel's actions were not supported by a "reasonable" strategic choice made after the exercise of "reasonable professional judgment." Strickland, 466 U.S. at 690-91; *see also*

Harrington v. Richter, 562 U.S. 86, 110 (2011) ("Strickland, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind."); Massaro v. United States, 538 U.S. 500, 505 (2003) ("[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial.").  Whether, with the benefit of hindsight, the state court was incorrect in finding that counsel made a reasonable strategic decision in allowing numerous inadmissible and potentially prejudicial comments of the investigator to come before the jury is a close question.  However, the question before this Court turns on whether the state courts unreasonably applied Strickland or unreasonably determined the facts in finding that counsel was not deficient and that prejudice was not established.  The issue is not whether the State court's determination was correct but whether it was unreasonable, which is a high threshold to meet. Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).  This Court gives a heightened level of deference to a state court's finding that the requirements of Strickland have not been met.  *See id.*

Regardless of whether trial counsel may have been deficient in his decision to allow the video, the state court's determination was not unreasonable that Petitioner failed to prove prejudice as required by the

second prong of <u>Strickland</u>.  The state court determined that the references to Petitioner's possession of a pistol and drugs when he was much younger, for which adjudication was withheld, were minimal and the jury was instructed to ignore them.  The court noted that the investigator's reference to Petitioner's body language when confronted with the allegations were not necessarily inadmissible, and that counsel did a good job of pointing out to the jury that the officers had already made their mind up that Petitioner was guilty and were not in fact searching for the truth.

Moreover, in light of the evidence presented to the jury, the state court was correct that Petitioner failed to demonstrate that but for counsel's failure to object or redact the comments in the video, the result of the trial would have been different—a reasonable probability being one sufficient to undermine confidence in the outcome.  *See* <u>Strickland</u>, 466 U.S. at 694. The jury heard evidence of six college students who were driving by the scene of the shooting.  One student testified that the shooter was in her line of vision and was wearing a black shirt.  Ex. D at 48-49.  She said the other man present at the scene of the shooting was not wearing a black shirt. Ex. D at 49.  Four other students in the same car testified that the shooter was wearing black.  *Id.* at 62, 72, 83-84, 107.  Two of those students also testified the other man, who was not the shooter, was not wearing a black

shirt.  *Id.* at 62, 72.  Three of the students in the passing car testified that the other man ran away before the shooter ran.  *Id.* at 62-63, 71, 84-85. Two of the students testified that the shooter had short twists or dreadlocks.  *Id.* at 72, 84.  Three of the students testified the shooter was a black male.  *Id.* at 62, 71, 85.

Henry Dell Perry, a friend of the victim, testified that Petitioner and the victim, along with another man and a woman, came to his apartment in the Sand Pebbles complex near the location of the shooting.  He testified that during the visit, Petitioner and the victim went into the bathroom together for a few minutes.  He did not note what Petitioner was wearing, but the other man had on a brown shirt.  Perry testified that after they left, he heard shots and when he looked, he saw the same two men running from the corner back toward his apartment complex where they got into a car where the other woman was sitting.  The victim was lying on the ground.  He later gave Petitioner's cell phone number to police.  Ex. D at 108-32.

Shawanza Catrice Gardner testified she was with Petitioner, the victim, and a man named Sam Cosby on the night leading up to the shooting.  She said she and Cosby picked up the victim in the car Cosby was driving and then picked up Petitioner on Yaeger Street.  Another

witness who resides on Yeager Street testified he saw the victim leave Yaeger Street with Petitioner and two others in a car on the night of May 17, 2010.  Ex. E at 139-42, 185-86.

Ms. Gardner testified the four of them drove to a store for drinks and gas and then to Perry's apartment.  *Id.* at 144-46.  After being in the apartment, she left the apartment to wait in the car and Cosby came out and sat with her.  *Id.* at 149.  She saw Petitioner and the victim leave the apartment and walk toward another apartment complex.  *Id.* at 150-51.  She testified that Cosby left the car when he heard Petitioner and the victim arguing.  She also heard loud arguing and heard the victim tell Petitioner to leave her alone.  *Id.* at 155.  Gardner testified, "I turned back around to look back, I seen Sam [Cosby] running after I had heard a shot."  *Id.* at 156.  More shots were fired and then Petitioner ran to the car.  Gardner testified Sam threw his hat like he was mad and "asked him why did he do it" and Petitioner answered, "A man's got to do what a man's got to do."  They drove away from the apartment complex and took Petitioner back near where they picked him up.  *Id.* at 156-57.  She testified that when Petitioner got out of the car, he had a white shirt with him that looked like it had something wrapped in it.  Ex. E at 158-61.  She also heard Petitioner comment that the victim did not give him his money.  *Id.* at 158.

Gardner testified that Petitioner was wearing a black shirt that night and Cosby was wearing all garnet and gold FSU colored clothing. Ex. E at 164-67. She testified that Petitioner had a six or seven-inch-long Afro that was twisted on the night of the shooting and Cosby had a low fade haircut with designs, and he was wearing a hat when he was out of the car. Ex. G at 520-22; Ex. E at 177.

The jury also heard evidence that Petitioner's cell phone records were obtained and showed that he was in the vicinity of cell towers close to the site of the shooting at 11:23 p.m. on May 17, 2010, although no records showed where the cell phone was at the time shots were fired. The investigator also testified that on the morning of May 18, 2010, after the 12:15 a.m. shooting, Petitioner requested his cell phone carrier to change his telephone number. Ex. G at 446-67.

Jerry Chambers, Jr., testified for the defense that he knew the victim from the homeless shelter and that he saw Petitioner and the victim laughing and talking on the sidewalk on the night of the shooting. He said they gave him a light for his cigarette. Ex. G at 485-86. Chambers testified that when he walked away, he saw someone talking to Petitioner and the victim. *Id.* at 487. The man had twists or braids in his hair. Chambers testified he did not see that man in the courtroom. *Id.* at 488. Chambers

heard shots fired and ran behind a car to call 911.  He said when he looked up again, he saw the back of the man with the "braids" and that the man went toward a four-door car and got in.  *Id.* at 490-91.  He implied but did not explicitly state that the man with the braids was doing the shooting.  *Id.* at 489.  He said he did not see what happened to Petitioner.  *Id.* at 490.  Chambers attempted CPR on the victim while waiting for emergency personnel.  On cross-examination, Chambers identified a photograph, Exhibit C-1, as depicting the shooter.  *Id.* at 498, 503-04.  He testified that the person in the photograph was the shooter and he knew that "because that's what I seen."  Ex. G at 498.  He said he was sure.  *Id.*  The photograph was later identified by Gardener as depicting Petitioner and how his hair looked on the night of the shooting.  *Id.* at 520-22.

Even if counsel had not requested the video be played in full, the officer would have testified to certain things Petitioner said in his police interrogation, which likely would have included the fact that he told police he was not with the victim when the shooting occurred.  For example, he told Officer Besse that he did not go anywhere with the victim after meeting her on Yaeger street.  Ex. F at 388-89, 390, 393, 400, 422.  He said they never had a conversation.  *Id.* at 394.  He said he was never in the car with the victim or Sam Cosby.  *Id.* at 395.  He told Officer Besse he was

nowhere near the shooting incident. *Id.* at 396, 398, 403, 406, 407, 408. A verbal summary of the police interrogation in lieu of showing the video would have made clear to the jury—even without the officer accusing Petitioner of lying—that his statements of not knowing or being with the victim and not being in the area of the shooting were false.

In light of the evidence presented at trial, Petitioner did not demonstrate a reasonable probability sufficient to undermine confidence in the outcome that but for defense counsel's decision in allowing the video in full, the outcome of the trial would have been different. Moreover, Petitioner agreed to counsel's strategy on the record at trial. The state court's determination was not shown to be unreasonable in finding that both prongs of the Strickland test for ineffective assistance of counsel were not met. For this reason, habeas relief under § 2254 is not warranted and the petition should be denied.

## Conclusion

Based on the foregoing, Petitioner Alvin Herron is not entitled to federal habeas relief. Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is

filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

### Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1). It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on December 9, 2019.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.**